UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD DOHERTY, | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS M. GUERINO, in both | ) | |
| his individual and official capacity, and | ) | |
| the TOWN OF BOURNE, | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

This action is brought by Richard Doherty, a former firefighter and paramedic for the Bourne Fire Department who asserts that he has been terminated from his employment in violation of his right to free speech under the First Amendment to the United States Constitution. Specifically, Doherty asserts that the Defendants' decision to terminate his employment was a direct result of his speech, made through his Facebook account, that was critical of Town and Fire Department policies and practices. Doherty further asserts that this speech touched on matters of public concern, including topics that had been widely reported in the local newspapers, and was absolutely protected by the First Amendment.

### II.   JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this case raises a federal question under the United States Constitution and 42 U.S.C. § 1983.

1

III.   PARTIES

1.  The Plaintiff, Richard Doherty ("Plaintiff" or "Doherty"), is an adult resident of
    Mattapoisett, Massachusetts. Until February 23, 2011, Doherty was a firefighter and
    paramedic with the Town of Bourne Fire Department.

2.  Defendant Thomas M. Guerino ("Guerino") is the Town Administrator for the Town
    of Bourne and, in that capacity, is responsible for personnel decisions related to Town
    employees, including termination decisions. He is a resident of Vermont.

3.  Defendant Town of Bourne ("the Town" or "Bourne") is a town located on Cape
    Cod, in the Commonwealth of Massachusetts.

IV.   FACTS

4.  Plaintiff Richard Doherty was a fire fighter and paramedic for the Town of Bourne
    for approximately 16 years.

5.  During his tenure with the Bourne Fire Department, Doherty was also a member of
    the union representing the Town's firefighters, Professional Firefighters of Bourne,
    Local 1717, IAFF.

6.  From approximately September 2009 until September 2010, Doherty served as the
    Union's Vice-President. Prior to that, he served for almost five years on the Union's
    grievance committee.

7.  During the period relevant to this case, Doherty maintained an account through
    Facebook, a web-based social networking site that permits users to share pictures,
    comments and information with others whom they designate as their "friends."

2

8.  Through Facebook, Doherty had a "profile page," in essence, a personal website to which he posted his thoughts about events in his life, including comments and speech about his role in the Bourne Firefighters union and issues pertinent to the Town's administration of the department.

9.  At the time, Doherty had approximately 40 "friends" through his Facebook account, some of whom were also Town of Bourne employees.

10. Doherty's Facebook profile page was protected by a password and Doherty understood that only those individuals whom he designated as "friends" on the site could see the content he posted.

11. On or about April 22, 2010, while working for the Bourne Fire Department, Doherty and his partner responded to a call for paramedics at an accident scene on Shore Road in Bourne.

12. While attending to an injured individual at the scene, Doherty was nearly run over by a call firefighter, Robert Ronayne, who was speeding through the accident scene and driving recklessly while on his way to another call. In addition to Doherty, Ronayne also nearly struck a civilian tow-truck operator.

13. Doherty made a complaint about Ronayne's unsafe driving to the Bourne police officer at the accident scene.

14. Later, Doherty went to the Bourne Police Department and requested a copy of the police report related to this incident. At the time, it was common practice for members of the police department to provide courtesy copies of police reports to members of the fire department, like Doherty.

3

15. On this occasion, however, Sergeant Dennis Woodside of the Bourne Police Department informed Doherty that, in order to obtain a copy of the police report relating to the Ronayne incident, he would need to complete a Freedom of Information Act request, pay a fee for copying and wait for his request to be processed and the copy mailed to his home.

16. Not long after, on or about April 28, 2010, an article about the Ronayne incident appeared on the front page of the Cape Cod Times.

17. Doherty then learned that the police department had provided the reporter for the Cape Cod Times with a copy of the very police report he had requested, without requiring the reporter to complete a form, pay a fee or wait for processing.

18. Doherty then posted a comment through his Facebook account criticizing the Bourne Police Department for cooperating with the media while at the same time denying him, a fellow safety officer, a copy of the police report. In his Facebook post, Doherty chastised certain members of the Bourne police department for their lack of loyalty to other public safety officers.

19. Doherty made this comment as a private citizen, in a forum that he understood was limited to approximately 40 of his colleagues and friends.

20. Throughout 2010, the Fire Department and the Town of Bourne were in ongoing discussions concerning the Bourne Fire Department's use of mandatory overtime to cover staffing shortfalls created by vacancies in the department.

21. The issues related to fire department overtime pay were widely reported in the local media, including the Cape Cod Times and the Bourne Courier.

22. The firefighters' union, and Doherty, had objected to the department's use of mandatory overtime, particularly the department's practice of holding individual firefighters over for a 12-hour overtime shift, immediately after concluding a 24-hour shift. The union and Doherty objected to this practice, in part, because firefighters were prevented from resting during the overtime shifts, after having been up for 24 hours, and this situation created a potential threat to public safety where the firefighters were too exhausted to perform their jobs effectively.

23. On July 4, 2010, while working a mandatory overtime shift, Doherty posted a message to his Facebook account, complaining about being assigned mandatory overtime again.

24. Doherty made this comment as a private citizen, in a forum that he understood was limited to approximately 40 of his colleagues and friends.

25. In approximately 2009, the Bourne Fire Department moved to a new building.

26. Shortly thereafter, union members, including Doherty, began alerting department leadership and the Town that several firefighters who had spent 24 hour shifts in the living quarters of the station were experiencing headaches and sore throats after resting or sleeping in the bunk areas.

27. As a response to these complaints, Deputy Fire Chief Kingsbury reported to the union that he would investigate the building's HVAC system.

28. Sometime thereafter, when no improvement to the station's HVAC systems had been made, another Bourne Fire Department member, Brandon Farro, posted to his Facebook profile a picture of one of the air vents from the department's station. Farro pointed out that the vent was clogged with dirt and mold.

29. Doherty, through his Facebook account, commented on Farro's picture and cited the deputy fire chief as incompetent, pointing out that he had recently been demoted.

30. Doherty made this comment as a private citizen, in a forum that he understood was limited to approximately 40 of his colleagues and friends.

31. Deputy Fire Chief Kingsbury's demotion had been reported in the local media and was a matter of public concern.

32. In his capacity as a union member and officer, Doherty had met with Town and Fire Department administrators regarding the union's concerns about the safety and cleanliness of the fire station building and some of these meetings were also reported in the local newspaper.

33. At some time in the summer of 2010, then-acting Fire Chief, Dan Doucette, learned of Doherty's Facebook postings.

34. On or about September 13, 2010, the Town of Bourne advised Doherty that a hearing would be held on September 20, 2010 to determine whether there was just cause to terminate him from the Fire Department.

35. At that time, the Town alleged that Doherty had violated the Fire Department's Rules and Regulations by making the comments described above through his Facebook account.

36. The hearing took place on September 20, 2010.

37. On February 16, 2011, the Hearing Officer issued a decision.

38. On February 23, 2011, the Town adopted the Hearing Officer's decision and determined that it had just cause to terminate Doherty from the Bourne Fire Department.

39. In his letter of February 23, 2011, Defendant Guerino, as the Bourne Town Administrator, stated that the decision to terminate Doherty was based on Doherty's Facebook postings.

40. Guerino claimed that Doherty's Facebook postings publicly ridiculed and disparaged members of the Bourne Police and Fire Departments, including Doherty's superior officers, and was grounds for termination.

41. On February 23, 2011, Guerino, on behalf of the Town of Bourne, terminated Doherty's employment.

## COUNT I
### (First Amendment; 42 U.S.C. § 1983)

42. The action of the Defendant, as set forth above, constitutes an unlawful restriction on Doherty's right to free speech under the First Amendment to the United States Constitution. This claim is asserted pursuant to 42 U.S.C. § 1983.

43. As a result of Defendant's violation of law, Doherty was terminated and has suffered damages, including back pay, front pay, emotional distress, loss of reputation and loss of benefits.

## COUNT II
### (Massachusetts Declaratory Judgment Act; M.G.L. ch. 231A § 1)

7

44. Doherty's actions, as described above, including his communications to others about matters of public concern, are protected by the First Amendment to the United States Constitution.

45. These communications are also protected by Article XXI of the Massachusetts Declaration of Rights.

46. Pursuant to Chapter 231A, Doherty seeks a declaration that Defendants violated his right to free speech, under both the First Amendment to the United States Constitution and Article XXI of the Massachusetts Declaration of Rights and seeks reinstatement to his position as Fire Fighter and Paramedic for the Town of Bourne.

COUNT III
(Massachusetts Civil Rights Act, M.G.L. c. 12 § 11I)

47. As a resident of the Commonwealth, Doherty is subject to the protections afforded by the Massachusetts Declaration of Rights.

48. Doherty's communications, through his Facebook account, as described above, are speech and are protected by Article XXI of the Declaration of Rights, which grants residents of Massachusetts the right to speak openly on matters of public concern.

49. Defendants' actions – including their investigation of Doherty's speech and subsequent termination of Doherty as a result of that speech – constituted efforts to threaten, intimidate and/or coerce Doherty into surrendering his ability to enjoy the rights guaranteed him by the Massachusetts Declaration of Rights.

50. As such, Defendants' actions, as described above, violate the Massachusetts Civil Rights Act.

8

## RELIEF REQUESTED

Plaintiff requests this Honorable Court to grant all appropriate declaratory, injunctive and compensatory relief, including, but not limited to:

a)  back pay, including the value of lost benefits;

b)  reinstatement with full seniority and/or front pay;

c)  future damages;

d)  emotional distress damages;

e)  damages for loss of reputation;

f)  punitive damages

g)  attorney's fees; and

h)  whatever relieve this Court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully submitted,

RICHARD DOHERTY, Plaintiff
By his attorneys,

Harold L. Lichten BBO#549689
Sara Smolik BBO# 661341
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994.5800

Dated:  May 26, 2011

9